**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

NATIONAL FOUNDERS LP,            )
                                 )
        Plaintiff,               )
                                 )
v.                               )        Case No. 8:26-cv-02162
                                 )
INTEGRITY FUNDING                )
GROUP, INC.,                     )
                                 )
        Defendant.               )

## COMPLAINT

Plaintiff, National Founders LP ("Plaintiff" or "NF"), files this Complaint against Defendant, Integrity Funding Group, Inc. ("IFG"), and alleges as follows:

## INTRODUCTION

1.      This is an action to protect NF's perfected security interest in structured settlement and assignable annuity receivables and identifiable proceeds of those receivables.

2.      NF is a secured lender to nonparty, SuttonPark Capital LLC ("SPC"), and certain of its subsidiaries and affiliates.

3.      In November 2020, SPC purchased a portfolio of structured settlement and assignable annuity receivables ("Receivables") from nonparty,

INF Settlement Trust ("INFST"), a Delaware Statutory Trust established by IFG and its principals.

4.     SPC transferred and assigned certain Receivables to VOLANS 2018 LLC ("Volans"), an SPC subsidiary, and these certain Receivables, together with all related collections, payments, and proceeds, were pledged as collateral to NF. NF has a perfected security interest in the Receivables and their identifiable proceeds.

5.     IFG had knowledge the Receivables had been sold to SPC and pledged as collateral to NF.

6.     Despite that knowledge, IFG caused payments on the Receivables ("Collateral Payments") to be redirected away from SPC and instead to IFG.

7.     IFG has improperly redirected approximately $2.8 million in Collateral Payments on the Receivables pledged to NF.

8.     Those Collateral Payments are identifiable proceeds of NF's collateral.

9.     NF has repeatedly demanded IFG cease redirecting the Collateral Payments and remit all misdirected payments to NF's designated servicer.

10.     IFG has refused to return the misdirected Collateral Payments.

2

11.    NF brings this action for a declaration of its perfected security interest and rights in the Receivables and Collateral Payments and for conversion of the Collateral Payments wrongfully received, retained, and controlled by IFG.

## PARTIES

12.    Plaintiff NF is a limited partnership organized under the laws of Delaware.

13.    NF's partners are citizens of Georgia and Nevada. Specifically, NF's partners are Credigy Solutions Inc., a Georgia corporation with its principal place of business in Georgia, and Credigy Acquisition Corp., a Nevada corporation with its principal place of business in Nevada. No partner of NF is a citizen of Florida.

14.    Defendant IFG is a Florida corporation with its principal place of business located at 1566 Global Court, Sarasota, Florida 34240.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

16.    Complete diversity exists between NF and IFG.

17.　The amount in controversy exceeds $75,000, exclusive of interest and costs. IFG has received and retained approximately $2.8 million in Collateral Payments on the Receivables pledged to NF.

18.　This Court has personal jurisdiction over IFG because IFG is a Florida corporation with its principal place of business in Sarasota, Florida.

19.　Venue is proper in this District because IFG resides in this District and a substantial part of the events or omissions giving rise to NF's claims occurred in this District, including IFG's receipt, retention, direction, or control of the misdirected Collateral Payments.

## FACTUAL ALLEGATIONS

20.　In November 2018, NF entered into a credit agreement (the "Credit Agreement") with Volans, an SPC subsidiary established by SPC and its principals, together with SPC and certain other subsidiaries and affiliates.

21.　The Credit Agreement has been amended, restated, supplemented, or otherwise modified from time to time, including most recently in April 2026.

22.　The Credit Agreement constitutes and includes a security agreement in favor of NF (the "Security Agreement").

23.　Under the Security Agreement, NF was granted a continuing security interest in certain collateral, including, among other things: all

accounts; contract rights; general intangibles, including payment intangibles; all rights to receive collections under or pursuant to the Receivables or other contracts providing for payment of amounts due in respect of the Receivables; and all products and proceeds of the foregoing.

24. The Receivables and the Collateral Payments are collateral, collections, and/or identifiable proceeds of collateral in which NF has a perfected security interest.

25. In November 2020, SPC purchased the Receivables from INFST pursuant to a Structured Settlement Receivables Purchase and Sale Agreement (the "PSA").

26. Under the PSA, SPC purchased the Receivables and became entitled to receive the payments due under the Receivables.

27. The Receivables were pledged as collateral to NF pursuant to the Credit Agreement.

28. In conjunction with those pledges, NF made advances secured in part by the Receivables.

29. NF's security interest in the Receivables and their proceeds is valid, enforceable, and perfected.

30. NF has the right to possession, collection, and control of the identifiable proceeds of its collateral, including the Collateral Payments on the Receivables.

31. In or around June 2024 and thereafter, IFG began instructing annuity issuers, insurance companies, or other payors responsible for payments on the Receivables to redirect those Collateral Payments away from SPC, NF, and/or the designated servicer and instead to IFG.

32. IFG accomplished or attempted to accomplish those redirections by filing corporate resolutions, payment redirection requests, or similar instructions with annuity issuers, insurance companies, or other payors.

33. IFG had no right to redirect or retain the Collateral Payments on the Receivables.

34. IFG's conduct diverted Collateral Payments in which NF has a perfected security interest.

35. IFG's conduct deprived NF of possession, control, and collection of identifiable collateral proceeds.

36. In September 2024, representatives of NF and SPC met with Gregory Roper, IFG's President.

37. During that meeting, Mr. Roper acknowledged the Receivables rightfully belonged to SPC following the transaction contemplated by the PSA.

38. IFG continues to claim, retain, control, or withhold Collateral Payments, which are identifiable proceeds of NF's collateral.

39. IFG's receipt and retention of the misdirected Collateral Payments was unauthorized.

40. IFG has no ownership or possessory right in the Receivables or their proceeds, including the Collateral Payments.

41. The misdirected Collateral Payments are specific and identifiable funds traceable to Receivables pledged to NF.

42. IFG's continued retention and control of those proceeds constitutes wrongful dominion over property in derogation of NF's rights.

## <u>COUNT I</u>
## <u>DECLARATORY JUDGMENT</u>

43. NF incorporates paragraphs 1 through 42 as if fully set forth herein.

44. An actual, present, and justiciable controversy exists between NF and IFG concerning NF's rights in the Receivables and their proceeds.

45.     NF has a valid, enforceable, and perfected security interest in the Receivables and all identifiable proceeds of the Receivables, including the Collateral Payments.

46.     Payments made on the Receivables are identifiable proceeds of NF's collateral.

47.     IFG has no right to redirect, collect, receive, retain, transfer, dissipate, or otherwise exercise dominion or control over payments on the Receivables, including the Collateral Payments.

48.     IFG has acted inconsistently with NF's rights by redirecting, receiving, retaining, controlling, withholding, or refusing to remit payments on the Receivables.

49.     IFG's conduct creates uncertainty and controversy concerning the parties' rights and legal relations.

50.     A declaration of rights will resolve that controversy and clarify NF's rights in the Receivables and their proceeds.

51.     NF is entitled to a declaration that:

a.     NF has a valid, enforceable, and perfected security interest in the Receivables;

b.     NF's security interest extends to all identifiable proceeds of those Receivables, including the Collateral Payments;

8

c.   The Collateral Payments received by IFG are identifiable proceeds of the Receivables; and

d.   IFG has no right to redirect, collect, receive, retain, transfer, or interfere with the Collateral Payments on the Receivables.

## COUNT II
## CONVERSION

52.   NF incorporates paragraphs 1 through 42 as if fully set forth herein.

53.   NF has a valid, enforceable, and perfected security interest in the Receivables and all identifiable proceeds of the Receivables, including the Collateral Payments.

54.   Payments made on the Receivables are identifiable proceeds of NF's collateral.

55.   NF has the right to possession, collection, and control of those identifiable proceeds pursuant to the Credit Agreement, including the Security Agreement therein.

56.   IFG had knowledge the Receivables had been sold to SPC and pledged to NF.

57.   IFG had knowledge, and was repeatedly advised, that payments on the Receivables constituted collateral or proceeds of collateral in which NF had a perfected security interest.

9

58.    IFG nevertheless caused payments on the Receivables to be redirected to IFG.

59.    IFG received, retained, controlled, or exercised dominion over the Collateral Payments on the Receivables.

60.    IFG's receipt, retention, control, and exercise of dominion over those payments was unauthorized and inconsistent with NF's rights.

61.    The converted funds are specific and identifiable because they are traceable to particular Receivables and can be identified by records including the annuity issuers, contract numbers, file numbers, payment dates, and payment amounts.

62.    Based on the accounting presently available to NF, IFG has improperly converted approximately $2.8 million in Collateral Payments on Receivables pledged to NF.

63.    NF demanded that IFG return and remit those funds.

64.    IFG has failed and refused to return and remit those funds.

65.    IFG's conduct deprived NF of possession, collection, control, and use of identifiable collateral proceeds.

66.    IFG's conduct constitutes conversion.

67.    NF has been damaged by IFG's conversion in an amount to be proven at trial, approximately $2.8 million, plus all additional converted

10

proceeds discovered or proven, prejudgment interest, post-judgment interest, costs, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

68.    NF reserves the right to amend this Complaint to the extent discovery uncovers information to support claims sounding in fraud.

WHEREFORE, NF respectfully requests that the Court enter judgment in its favor and against IFG and grant the following relief:

A.    A declaration that NF has a valid, enforceable, and perfected security interest in the Receivables;

B.    A declaration that NF's security interest extends to all identifiable proceeds of those Receivables, including the Collateral Payments;

C.    A declaration that the Collateral Payments received by IFG are identifiable proceeds of the Receivables;

D.    A declaration that IFG has no right to redirect, collect, receive, retain, transfer, or interfere with the Collateral Payments on the Receivables;

E.    An order requiring IFG to cease any further redirection, collection, receipt, retention, transfer, dissipation, or interference with payments on the Receivables;

11

F.    An award of damages for conversion in an amount to be proven at trial, approximately $2.8 million;

G.    An award of all additional payments on the Receivables that IFG converted and that are discovered or proven in this action;

H.    Prejudgment interest;

I.    Post-judgment interest;

J.    Costs of this action;

K.    An award of attorneys' fees; and

L.    Such other and further relief as the Court deems just and proper.

Dated:  July 27, 2026                          Respectfully submitted,

*/s/ Bradley J. St. Angelo*
Bradley J. St. Angelo, Esq. (#119399)
Lead Counsel
Bryan C. Shartle, Esq.
(*PHV forthcoming*)
Sessions, Israel & Shartle, LLC
3838 N. Causeway Blvd., Suite 2800
Metairie, LA 70002
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
Email: bstangelo@sessions.legal

*Counsel for Plaintiff,*
*National Founders LP*